# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**JOHN C. SEKULA and JACQUELINE SEKULA,**

        **Plaintiffs,**

**v.**                                   **Case No:   6:15-cv-2104-Orl-31KRS**

**RESIDENTIAL CREDIT SOLUTIONS, INC. and AMERICAN WESTERN HOME INSURANCE,**

        **Defendants.**

_____

## ORDER

This matter comes before the Court without a hearing on the motions to dismiss filed by Defendant Residential Credit Solutions, Inc. ("Residential Credit") (Doc. 27) and by Defendant American Western Home Insurance ("American Western") (Doc. 25), as well as the response (Doc. 39) filed by the Plaintiffs, John and Jacqueline Sekula (the "Sekulas").

### I.     Background

According to the allegations of the Complaint (Doc. 1), which are accepted in pertinent part as true for purposes of resolving the instant motion, in 2006 the Sekulas closed a mortgage loan in the amount of $282,400.   (Doc. 1 at 11).   The loan was secured by a mortgage on real property in Seminole County, Florida.   (Doc. 1 at 11).   As of early 2014, Bank of New York Mellon owned the note and the mortgage.   (Doc. 1 at 11).   As of at least December 2013, the loan was being serviced by Defendant Residential Credit.   (Doc. 1 at 11).

As a condition of obtaining the mortgage, the Sekulas were required to maintain insurance coverage on the Seminole County property.   (Doc. 1 at 1-2).   The terms of the mortgage

agreement permitted Residential Credit to "force-place" coverage on the property if the Sekulas failed to maintain such coverage.   In February 2014, Residential Credit force-placed $485,900 in coverage through Defendant American Western for an annual premium of $10,544.   (Doc. 1 at 12).   The Sekulas contend that at that time, the replacement value of their house was less than $300,000.   In late 2014, the Sekulas obtained a $300,000 policy with an annual premium of $785. (Doc. 1 at 12).

On December 15, 2015, the Sekulas filed the instant putative class action suit, asserting claims for breach of contract (Count I); breach of the implied covenant of good faith and fair dealing (Count II); unjust enrichment (Count III and Count IV); violation of the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* (Count V); and tortious interference with business relations (Count VI).   Count IV is asserted against American Western, and Count VI is asserted against both Defendants.   The remaining counts are asserted against Residential Credit, only.

## II.   Legal Standards

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to give the defendant fair notice of what the claim is and the grounds upon which it rests, *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957), *overruled on other grounds*, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).   A Rule 12(b)(6) motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milbum v. United States*, 734 F.2d 762, 765 (11th Cir.1984).   In ruling on a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff.   *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.1988).   The

Court must also limit its consideration to the pleadings and any exhibits attached thereto.   Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

The plaintiff must provide enough factual allegations to raise a right to relief above the speculative level, *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1966, and to indicate the presence of the required elements, *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir. 2007).   Conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal.   *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court explained that a complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.   A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.   Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id*. at 1949 (internal citations and quotations omitted).   "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the plaintiff is entitled to relief.'"   *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

### III.      Analysis

### A.      Breach of Contract vs. Residential Credit

The following passage from the mortgage agreement (Doc. 1-1) authorizes Residential Credit (on behalf of the lender) to force-place insurance on the Sekulas' property:

> Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. ***This insurance shall be maintained in the amounts (including deductible levels) and for the periods that***

> ***Lender requires.*** What Lender requires pursuant to the preceding sentences can change during the term of the Loan. . . . ***If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense***. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. ***Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance*** that Borrower could have obtained.

(Doc. 1-1 at 6).   The Sekulas do not dispute that the mortgage agreement[1] gave the loan servicer the right to force-place insurance on their home in February 2014.   Instead, they assert that Residential Credit breached the mortgage agreement by obtaining insurance coverage with limits in excess of the replacement value of their house and for "backdated" periods where no loss had occurred.[2]   (Doc. 1 at 17).   The Sekulas also contend – based on "information and belief" – that the premium for the force-placed insurance was improperly inflated due to kickbacks and other considerations paid by American Western to Residential Credit.   (Doc. 1 at 17).

To state a claim for breach of contract under Florida law, a plaintiff must plead (1) the existence of a contract, (2) a material breach of that contract, and (3) damages resulting from the breach.   *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009).   Residential Credit first argues that the Sekulas have failed to state a claim because they have failed to cite a provision of the mortgage agreement that was breached.   (Doc. 27 at 5).   However, though never explicitly

---

[1] The parties entered into a modification agreement in 2011.   (Doc. 27 at 11).   For simplicity's sake, this opinion will refer to both documents simply as the "mortgage agreement".

[2] This action is a putative class action.   In addition to the allegations regarding the Sekulas, the Complaint includes allegations regarding the Defendants' conduct toward the putative class members.   The instant order will only quote and consider the allegations regarding the Sekulas.

stated, the Sekulas are clearly arguing that Residential Credit has exceeded the authority provided in that agreement to force-place insurance. This is sufficient.

Residential Credit also argues that there can be no breach here because the mortgage agreement authorizes all of the activities it is alleged in the Complaint to have undertaken, in that (among other things) the mortgage agreement permits force-placing of insurance "in the amounts … and for the periods that Lender requires."   (Doc. 27 at 5-6).   It is true that the expansive language of the mortgage agreement appears to permit the lender to do several of the things of which the Sekulas now complain.   The Sekulas assert that Residential Credit "knowingly charges borrowers' premiums for force placed hazard insurance that are substantially more expensive than what is available on the private market."   (Doc. 1 at 17).   However, the mortgage agreement authorizes the lender to obtain insurance with a cost that "significantly exceed[s]" that of insurance the Sekulas could have obtained on their own.   (Doc. 1-1 at 6).   Similarly, the Sekulas complain that Residential Credit "force placed insurance with dwelling coverage limits far in excess of the replacement cost value of the improvements on the property … and for backdated periods where no loss had occurred."   (Doc. 1 at 17).   But the mortgage agreement allows the lender to obtain insurance "in the amount it requires," not merely the replacement value of the house, and for whatever time period it requires, not merely the future.   (Doc. 1-1 at 6).

However, the Sekulas have also alleged that the premium they had to pay for the force-placed insurance was inflated, *inter alia*, by kickbacks to be paid by American Western to Residential Credit.   (Doc. 1 at 17).   This would exceed the authority provided by the mortgage agreement.   *See, e.g., Wilson v. EverBank, N.A.*, 77 F.Supp.3d 1202, 1217 (S.D. Fla. 2015) (finding that kickback allegations were sufficient to state claim for breach of contract in force-placed insurance case with similar mortgage agreement language, and citing cases).

Residential Credit contends that this argument is foreclosed by *Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098, 1110-11 (11th Cir. 2014), a force-placed insurance case in which the Eleventh Circuit dismissed a claim based on similar allegations.   In doing so, the *Feaz* court stated that "simply calling a commission a kickback doesn't make it one" and explained that the "defining characteristic of a kickback is divided loyalties." *Id.*   However, the *Feaz* court made these remarks in the context of dismissing a claim for breach of fiduciary duty rather than, as here, a contractual claim.   *Id.*   Residential Credit has not cited, nor has the Court found, a case extending this reasoning to a breach of contract claim involving alleged kickbacks.   On the other hand, at least some Florida courts have permitted plaintiffs in force-placed insurance cases to proceed with breach of contract claims based on similar allegations.   *See, e.g.*, *Almanzar v. Select Portfolio Servicing, Inc.*, 2015 WL 1359150 (S.D. Fla. March 24, 2015) (denying motion to dismiss contract claim in force-placed insurance case and stating that "[i]f, as alleged, the force-placed insurance scheme was driven by illegal kickbacks, then disclosing the end cost of force-placing the insurance cannot insulate the Defendants from claims pertaining to the Defendants' behind-the-scenes activities that drove up the rates borne by unsuspecting borrowers.").

As to Count I, the motion will be denied.

**B.    Breach of the Implied Covenant of Good Faith and Fair Dealing vs. Residential Credit**

Under Florida law, a covenant of good faith and fair dealing is implied in every contract. *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.,* 420 F.3d 1146, 1151 (11th Cir. 2005) (citing *Cox v. CSX Intermodal, Inc.,* 732 So.2d 1092, 1097 (Fla. 1st DCA 1999)).   The covenant is "designed to protect the parties' reasonable contractual expectations." *Id.*   A breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a specific contractual obligation. *Id.*   Residential Credit argues that the

mortgage agreement expressly permits all of the conduct at issue, and that the Sekulas have therefore failed to state a claim for breach of the implied covenant of good faith.   However, Residential Credit's discretion to force-place insurance is limited by its obligation to proceed in good faith.   An undisclosed kickback would be a violation of that implied duty.   As to Count II, the motion will be denied.

### C.   Unjust Enrichment (Counts III and IV)

In Count III, the Sekulas assert that Residential Credit was unjustly enriched when it "collected from American Western … percentages of force-placed hazard insurance premiums, and other amounts, as kickbacks, expense reimbursements, and reinsurance … in exchange for the exclusive right to force place insurance policies for Residential Credit."   (Doc. 1 at 22).

Under Florida law, the essential elements of an action for unjust enrichment are

> a benefit conferred **upon the defendant by the plaintiff**, appreciation by the defendant of such benefit, and acceptance and retention of such benefit by the defendant under such circumstances that it would be inequitable for him to retain it without paying the value thereof.

*Henry M. Butler, Inc. v. Trizec Properties, Inc.,* 524 So. 2d 710, 712 (Fla. 2d DCA 1988) (emphasis added).   Thus, to state a claim for unjust enrichment, the plaintiff must allege that the benefit at issue was conferred by the plaintiff.   In Count III, however, the Sekulas have alleged that the benefit at issue was conferred upon one defendant by the other.   Count III is therefore due to be dismissed without prejudice.

In addition, under Florida law, "a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter."   *Diamond "S" Development Corp. v. Mercantile Bank*, 989 So. 2d 696, 696 (Fla. 1st DCA 2008).   In this case, the mortgage agreement clearly governs the imposition of force-placed insurance.   A plaintiff may plead in the alternative for relief under an express contract and for unjust enrichment, but

only where one of the parties asserts that the contract governing the dispute is invalid.   *Wilson v. EverBank, N.A.*, 77 F. Supp. 3d 1202, 1220 (S.D. Fla. 2015) (citing cases).   The Sekulas purport to bring their unjust enrichment claim against Residential Credit in the alternative to their contractual claim, but no party has suggested that the mortgage agreement is invalid.   For this reason as well, Count III is due to be dismissed.[3]

The allegations in Count IV are problematic in several ways.   The Sekulas first complain that American Western was paid by Residential Credit to provide tracking services – *i.e.*, to determine whether the Sekulas were maintaining insurance on their house, and to notify Residential Credit if the coverage lapsed – but also "included the entire cost of that tracking service in the premium … which was ultimately charged to the borrowers."   (Doc. 1 at 23).   The Complaint, however, does not contain any factual allegations supporting this "double-billing" theory.   In the absence of some indication as to how the Sekulas determined that the amount withdrawn from their escrow account was not solely for American Western's insurance but also for American Western's tracking services, this assertion is insufficient to state a claim for unjust enrichment.

American Western also argues that it billed (and received payment from) Residential Credit for the insurance, rather than the Sekulas, and therefore Count IV must fail because no benefit was conferred upon it by the Sekulas.   The Sekulas respond that they indirectly conferred a benefit on American Western, and that conferring a benefit via a "conduit" – in this case, Residential Credit – can support an unjust enrichment claim.   Case law provides some support for

---

[3] American Western also seeks dismissal of the unjust enrichment claim against it based on the loan agreement.   However, this argument fails because American Western is not a party to that contract.   *Kowalski v. Jackson Nat. Life Ins. Co.*, 981 F. Supp. 2d 1309, 1317 (stating that "Florida courts have held that contracts barring the unjust enrichment claim must be between the parties to the unjust enrichment claim" and citing cases).

such a theory.  *See Williams v. Wells Fargo Bank, N.A.*, 2011 WL 4901346, at *5 (S.D.Fla. Oct. 14, 2011) (upholding unjust enrichment claim in force-placed insurance case against defendant that had no direct interaction with plaintiff and stating that "[i]t would not serve the principles of justice and equity to preclude an unjust enrichment claim merely because the 'benefit' passed through an intermediary before being conferred on a defendant.").

However, in Count IV, the Sekulas appear to assert both that their premium was paid to American Western and to Residential Credit.   Initially, they assert that American Western "*received from Plaintiffs* … benefits in the form of funds for force placed hazard insurance." (Doc. 1 at 23) (emphasis added).   This suggests the Sekulas paid American Western directly. Elsewhere in Count IV, however, the Sekulas argue that American Western received "kickbacks, unearned commissions, expense reimbursements, and other benefits *effectively conferred by the borrowers.*"   (Doc. 1 at 23) (emphasis added).   The allegation that the benefits were "effectively" conferred – rather than simply "conferred" – suggests that the Sekulas did not directly pay American Western.   Given this confusion, and the problems with the Sekulas' "double-billing" theory, dismissal without prejudice of Count IV is warranted to allow the Plaintiffs to lay out their allegations more precisely.

> **D.    TILA claim vs. Residential Credit (Count V)**

The Truth in Lending Act, 15 U.S.C. §1601 *et seq.*, "requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights."   *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998).   Failure to satisfy TILA subjects a lender to, *inter alia*, statutory and actual damages traceable to the failure to make the requisite disclosures.  *See* 15 U.S.C. §1640.   Section

1640(e) provides that an action for such damages "may be brought" within one year after a TILA violation.

Residential Credit seeks dismissal of Count V on the grounds that it was merely a loan servicer rather than a creditor and therefore not bound by TILA.   In response, the Sekulas point to the first page of the Complaint, where they assert that Residential Credit "owns and/or services mortgage loans secured by real property."   Taken as true, the Sekulas argue, this allegation establishes that Residential Credit is a creditor for purposes of TILA.   However, contrary to the Sekulas' argument in response to their motion, this is not an assertion that Residential Credit is owner of the loan now at issue in this case, so as to subject it to the requirements of the Truth in Lending Act.   Even if the Sekulas had alleged that Residential Credit "owns and/or services" their particular loan, such a conclusory assertion, alone, would not suffice to state a TILA claim against Residential Credit – and the Complaint does not contain any other allegations that Residential Credit was a loan owner rather than merely a loan servicer.   Count V will be dismissed without prejudice.[4]

### E.    Tortious Interference vs. both Defendants (Count VI)

In Count VI, labeled "Tortious Interference with a Business Relation" (Doc. 1 at 26), the Plaintiffs assert that the Defendants interfered with the relationship between themselves and their mortgage lender.   To state a claim for tortious interference with business relations under Florida law, a plaintiff must allege:

> (1) the existence of a business relationship … (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and

---

[4]   Because Count V is being dismissed on this basis, the Court does not address Residential Credit's other arguments, which may be reasserted if the Sekulas choose to reassert their TILA claim.

> (4) damage to the plaintiff as a result of the breach of the relationship.

*Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994) (quoting *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985).   The Defendants raise a number of arguments in favor of dismissal of this claim, including that any interference with the relationship was justified and that the mortgage authorized the actions they took.   However, the fundamental problem with this count is that there are no allegations that the Sekulas' lender (or the lender's successor) breached the relationship.   In their response to the instant motion, the Sekulas argue that they did allege that the mortgage was breached; however, the breaches to which they refer were (allegedly) committed by the Defendants, not the lender.   The gravamen of a tortious interference claim is that the defendant induced a third party to breach the contract or the relationship, not that the defendant itself did so.   *See*, *e.g.*, *Smith v. Ocean State Bank*, 335 So. 2d 641, 543 (Fla. 1976) ("One is liable for commission of this tort who interferes with business relations of another, both existing and prospective, by [inducing] a third person not to enter into or continue a business relation with another or by preventing a third person from continuing a business relation with another."). Count VI will be dismissed without prejudice.

**IV.      Conclusion**

In consideration of the foregoing, it is hereby **ORDERED** that the motion to dismiss filed by Defendant American Western Home Insurance (Doc. 25) is **GRANTED**, and the motion to dismiss filed by Defendant Residential Credit Solutions, Inc. (Doc. 27) is **GRANTED IN PART AND DENIED IN PART.**   Counts III through VI are **DISMISSED WITHOUT PREJUDICE.** In all other respects, the motions are **DENIED**.   Should the Plaintiff choose to file an amended pleading, it must do so on or before April 29, 2016.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on April 18, 2016.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party