# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

JOHN C. SEKULA and JACQUELINE SEKULA,

      **Plaintiffs,**

v.                                                                          Case No:   6:15-cv-2104-Orl-31KRS

RESIDENTIAL CREDIT SOLUTIONS, INC. and AMERICAN WESTERN HOME INSURANCE,

      **Defendants.**

## ORDER

This matter comes before the Court on the motions to dismiss filed by Defendant Residential Credit Solutions, Inc. ("Residential Credit") (Doc. 58) and by Defendant American Western Home Insurance ("American Western") (Doc. 59), as well as the response in opposition (Doc. 64) filed by the Plaintiffs, John and Jacqueline Sekula.

### I.   Background

Defendant Residential Credit is a mortgage servicer. Defendant American Western is an insurance provider. A standard provision in most mortgage agreements requires the borrowers to maintain hazard insurance on the mortgaged property. If the borrowers fail to do so, mortgage agreement authorizes the lender to obtain such insurance and charge the resulting premium to the borrowers' escrow account. Such insurance is sometimes referred to as "force-placed" insurance.

According to the allegations of the Second Amended Complaint (Doc. 55), which are accepted in pertinent part as true for purposes of resolving the instant motions, the Sekulas borrowed $482,400 in September, 2006, secured by a mortgage on their home in Seminole County, Florida.   (Doc. 55 at 11).   At some unspecified time thereafter, the Sekulas allowed their homeowners coverage to lapse.   Residential Credit obtained force-placed insurance from American Western on the Sekulas' home for the period February 26, 2014 to February 26, 2015.[1] (Doc. 55 at 12).   The Sekulas contend that Residential Credit did so improperly, in that the company (1) required coverage in excess of the replacement value of the home (Doc. 55 at 12) and (2) required coverage of a period prior to the policy's issue date when no loss had occurred. (Doc. 55 at 2).   The Sekulas also argue that Residential Credit "unfairly profited" in that its procurement of the insurance was "motivated by the promise of other compensation in the form of kickbacks, commissions, subsidies, discounted services, financial benefits, reimbursements, or other compensation for itself and its affiliates in connection with the policies … unnecessary to the actual protection of the lender's interest in the home."   (Doc. 55 at 3).

The Sekulas filed their first complaint (Doc. 1) in this matter on December 15, 2015.   In it, the Sekulas asserted claims for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, violation of the Truth in Lending Act, and tortious interference with a business relation.   On April 18, 2016, the Court dismissed the unjust enrichment, TILA, and tortious interference claims.   (Doc. 42 at 12).   On May 13, 2016, the Sekulas filed an amended complaint (Doc. 46), reasserting the claims for breach of contract and for breach of the covenant of good faith and fair dealing and adding a new claim for tortious interference with business

---

[1] Again, the date on which this occurred is not specified in the Second Amended Complaint

- 2 -

relations.  The Defendants sought dismissal of the amended complaint.  On August 15, 2016, the Court dismissed the new tortious interference claim without prejudice but rejected Residential Credit's effort to dismiss the two breach claims, noting that those claims had survived the first motion to dismiss and that Residential Credit had not suggested that the claims or its arguments had changed in any material way so as to justify a reexamination.  (Doc. 54 at 4).

In the Second Amended Complaint, the Sekulas again assert claims for breach of contract (Count I) and breach of the covenant of good faith and fair dealing (Count II), and again attempt to state a claim for tortious interference with business relations (Count III).  Counts I and II are asserted against Residential Credit, while Count III is asserted against both Defendants.  By way of the instant motions, the Defendants seek dismissal of all three claims.

## II.     Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to give the defendant fair notice of what the claim is and the grounds upon which it rests, *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957), *overruled on other grounds*, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  A Rule 12(b)(6) motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir.1984).  In ruling on a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff.  *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.1988).  The Court must also limit its consideration to the pleadings and any exhibits attached thereto.  Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

The plaintiff must provide enough factual allegations to raise a right to relief above the speculative level, *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1966, and to indicate the presence of the required elements, *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir. 2007). Conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal. *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

**III.   Analysis**

**A.   Count I and II: Breach of contract and breach of the implied covenant of good faith and fair dealing**

Florida law recognizes an implied covenant of good faith and fair dealing in every contract. *QBE Ins. Corp. v. Chalfonte Condominium Apartment Ass'n, Inc.*, 94 So. 3d 541, 548 (Fla. 2012). However, there are two limitations on such claims: (1) where application of the covenant would contravene the express terms of the agreement; and (2) where there is no accompanying action for breach of an express term of the agreement. *Id.*

Residential Credit again seeks dismissal of the Plaintiffs' claims for breach of contract and breach of the duty of good faith and fair dealing, both of which relate to the Sekulas' mortgage agreement. Although both of these claims survived the two prior motions to dismiss, Residential Credit argues they have changed in a material way and no longer state a claim. Residential Credit contends that in the initial pleading and the amended pleading, the Sekulas obscured the role played by Residential Credit with regard to the mortgage agreement at issue in this case, making only a general statement that the company "owns and/or services mortgage loans." In the Second Amended Complaint, however, the Sekulas have identified the other party to the mortgage agreement at the time the breaches were (allegedly) committed – Bank of New York Mellon (henceforth, "BNYM"). As such, the argument continues, the Court can no longer infer that

Residential Credit was a party to that agreement, which means that the Sekulas can no longer assert a claim for breach of that agreement against Residential Credit.[2]

The Plaintiffs do not dispute Residential Credit's contention that, according to the allegations of the Second Amended Complaint, it was not a party to the mortgage agreement. They also do not directly respond to Residential Credit's argument that only parties to an agreement can be held liable for its breach.  Instead, the Sekulas cite to two force-placed insurance cases in which breach of contract claims were allowed to proceed against loan servicers. However, neither case is on point.  The first case, *Circeo-Loudon v. Green Tree Servicing, LLC*, 2015 WL 1914798, 14-CIV-21384 (S.D.Fla. April 27, 2015), does not address the question of whether a non-party can be held liable for breach of contract.  To the contrary, in upholding tortious interference claims asserted against one defendant – American Reliable Insurance Company ("ARIC") – the *Circeo-Loudon* court stated that the mortgage servicer was actually a party to the relevant mortgage agreements:

> As the Plaintiffs stated plausible claims for relief on their breach of contract allegations, their detailed pleadings about how ARIC intentionally and unjustifiably caused Green Tree to breach its mortgage agreements with the Plaintiffs (by increasing the cost of hazard insurance to cover unearned kickbacks) are sufficient to state claims against ARIC for tortious interference with Green Tree's mortgage contracts with the Plaintiffs.

*Id.* at *5.  Because the mortgage servicer was a party to the agreements at issue, the fact that the *Circeo-Loudon* court allowed breach of contract claims to proceed against them does not aid the Plaintiffs here.

---

[2] In case it is not obvious, under Florida law, a breach of contract claim may only be asserted against a party to the contract.  *See Marlite, Inc. v. Eckenrod*, No. 10–23641–Civ., 2012 WL 3620024, *10 (S.D. Fla. July 13, 2012) (citing cases).

In the second case cited by the Plaintiffs, *Persaud v. Bank of America*, *N.A.*, 2014 WL 4260853, 14-21819-CIV (S.D.Fla. August 28, 2014), two mortgage servicers sought dismissal of certain claims[3] by arguing that they were not parties to the mortgage at issue.  *Id.* at *4.  However, the plaintiffs in that case had alleged that the mortgage servicers were liable as successors in interest to Countrywide Home Loans, Inc., the entity that originally held the note and mortgage (and which was also being sued for breach of that agreement).  *Id.* at *1.  Because of this, the mortgage servicers in *Persaud* could be held liable for breaches of the mortgage agreement without being parties to it.   As such, *Persaud* does not assist the Sekulas in stating a claim for breach of contract or breach of the duty of good faith and fair dealing.   Counts I and II will be dismissed with prejudice.

### B.     Count III:   Tortious Interference

As noted above, this is the Sekulas' third attempt to state a tortious interference claim against the Defendants.   In the initial Complaint, the Sekulas asserted that the Defendants "intentionally and unjustifiably interfered with" the business relationship between themselves and the owner of their mortgage loan.   (Doc. 1 at 27).   However, that claim was dismissed due to the Sekulas' failure to specify any way in which the owner of the loan had breached the relationship.[4] (Doc. 42 at 11).

---

[3] The *Persaud* court did not specify which claims the mortgage servicers' argument about not being parties to the agreement were intended to address.   However, the *Persaud* plaintiffs had asserted, *inter alia*, claims for breach of contract and breach of the covenant of good faith and fair dealing against the mortgage servicers, i*d.* at *3, and the Court assumes that at least those two claims were the intended targets of that argument.

[4] The Sekulas had identified a number of alleged breaches, but they had all been committed by one or both of the Defendants rather than the owner of the mortgage loan.   (Doc. 42 at 11).

In the tortious interference claim asserted in the Amended Complaint, the Sekulas added an allegation that "[b]ecause of Defendant's [sic] interference, Plaintiffs were prevented from continuing the relationship with their lender, who finally terminated and breached its relationship with Plaintiffs in 2015."   (Doc. 46 at 22).    Even with this new allegation, the Court concluded that the Sekulas had failed to state a claim because they had not identified the alleged breach or offered any explanation as to how the Defendants' activities caused the (unidentified) lender to commit it.   The tortious interference claim was again dismissed without prejudice, and the Sekulas were informed that they would be given "one final chance" to state a claim.   (Doc. 54 at 6).

In Count III of the Second Amended Complaint, the Sekulas begin by asserting that they had a contractual business relationship with the owner of their mortgage loan, and that the Defendants knew of it.   (Doc. 55 at 21).   They then allege that in 2014 they sought a loan modification from Residential Credit "with respect to their mortgage loan with Bank of New York Mellon, the current lender."   (Doc. 55 at 21).

> However, the huge force placed insurance premiums had been charged to Plaintiffs' escrow account (which would have to be paid off in accordance with its Modification Program, as well as standard loan modification requirements). At times material, Residential Credit … represented to Plaintiffs that the modification terms included payment of escrow items, such as the force placed insurance premiums at issue, and the modified loan required payment of the escrow. Due to the unwieldy and inflated sums demanded, Plaintiffs were precluded from loan modification. As a result, Plaintiffs were injured by Defendants' improper force placed insurance practices which impeded Plaintiffs' loan modification efforts, prevented the continuation of the business relationship with their lender, and resulted in the loss of their home.

(Doc. 55 at 21-22).[5]  The Plaintiffs go on to allege that the Defendants' actions in "wrongfully increasing the cost of insurance" in turn

> induced and caused the lender Bank of New York Mellon to breach its business relationship with Plaintiffs by (a) demanding inflated amounts from Plaintiffs which exceeded the authority provided by the mortgage terms; and (b) terminating all dealings and contracts with Plaintiffs in 2015 under circumstances not permitted by the mortgage terms. Moreover, since Defendants' improper insurance activities resulted in the underlying inflated premiums and related circumstances, such conduct caused the lender Bank of New York Mellon to commit the breaches.

(Doc. 55 at 22).

To state a claim for tortious interference with business relations, a plaintiff must allege:

> (1) the existence of a business relationship … (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship.

*Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994) (quoting *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985)).

Residential Credit does not dispute that the Plaintiffs have satisfied the first two elements of the tort.  American Western, however, points out that, based on the allegations of the Second Amended Complaint, its policies were placed pursuant to a master policy between itself and Residential Credit that covered all of the mortgages serviced by Residential Credit.  (Doc. 55 at

---

[5] It is not entirely clear why the Plaintiffs have included these allegations regarding the attempted loan modification in their tortious interference count.  The Plaintiffs do not allege that, but for the excessive insurance charge, they would have obtained the loan modification they sought from Residential Credit.  (They point the finger at "unwieldy and inflated sums" rather than just an inflated premium, suggesting there were additional barriers they could not overcome.)  Even if they had alleged that the excessive premium was the sole reason they were unable to obtain a loan modification, this would not support a tortious interference claim, as there is no allegation that the failure to obtain the modification in turn caused BMNY to breach the relationship.

9).   Therefore, American Western argues, it could not have known about any particular borrowers' relationships with their lenders.   (Doc. 59 at 9).   In response, the Sekulas point to an allegation from the Second Amended Complaint that both Defendants "had knowledge of a contractual relationship between Plaintiffs … and the mortgagees/lenders/investors that won the mortgage loans for Plaintiffs."   (Doc. 55 at 21).   However, this allegation is entirely conclusory, and therefore it is not enough to establish that American Western knew of the relationship between the Sekulas and BNYM.   The Sekulas offer no other basis for a finding that American Western possessed the requisite knowledge as to the relationship.   The claim will therefore be dismissed as to American Western.

Residential Credit makes a number of arguments in favor of dismissal of the tortious interference claim.   First, it argues that the breach underlying the tortious interference claim – the demanding of inflated amounts from the Plaintiffs – is the same as the alleged breach underlying their contractual claims (*i.e.*, the price-gouging on the force-placed insurance).   However, for present purposes, it does not matter that one of the things alleged to be a breach of the relationship between the Plaintiffs and BMNY was separately alleged to be a breach of the mortgage agreement.

Residential Credit also argues that the tortious interference claim fails in that the Sekulas have not alleged that it was a stranger to the relationship at issue, and therefore it was justified to interfere in that relationship.   Under Florida law, it is true, generally speaking, that only interference by strangers to a business relationship can be unjustified, as required to sustain a claim of tortious interference.   *Palm Beach County Health Care Dist. v. Professional Medical Educ., Inc.*, 13 So. 3d 1090, 1094 (Fla. 4th DCA 2009).   However, even non-strangers can be held liable where they are alleged to have acted in bad faith or with conspiratorial motives, as the

Sekulas have alleged in this case.  *See, e.g., Wilson v. EverBank, N.A.*, 77 F.Supp.3d 1202, 1239 (S.D.Fla. 2015).

More on point, however, is Residential Credit's argument that the breaches underlying the tortious interference claim are entirely unclear, and the alleged causal relationship between the Defendants' actions and those breaches is entirely conclusory.  The Court agrees that the Sekulas' assertions as to these points are still too vague to state a claim for tortious interference.  In Count III, the Sekulas allege that BMNY breached the relationship by "(a) demanding inflated amounts from Plaintiffs which exceeded the authority provided by the mortgage terms; and (b) terminating all dealings and contracts with Plaintiffs in 2015 under circumstances not permitted by the mortgage terms."  (Doc. 55 at 22).  However, merely demanding excessive amounts (presumably, the inflated insurance premium) is not a breach of the relationship, and there is no allegation that the Sekulas ever paid (or will have to pay) these excessive amounts, so there is no allegation of damage suffered as a result of the demand.  The second alleged breach – the termination of all dealing and contracts – is again maddeningly vague, but presumably refers to BMNY foreclosing on the Sekulas' home.  But there is no explanation as to how this termination was "under circumstances not permitted by the mortgage," or how this matters.  More importantly, there is no allegation that, but for the excessive insurance premium charged to their escrow account, the Sekulas would have been able to avoid foreclosure.  The nature of the breaches and their causation by the Defendants remains entirely opaque.

Despite three chances to do so, the Sekulas have failed to allege a plausible tortious interference claim.  Count III will therefore be dismissed with prejudice.

### IV.    Conclusion

In consideration of the foregoing, it is hereby

**ORDERED** that the on the motions to dismiss filed by Defendant Residential Credit Solutions, Inc. (Doc. 58) and by Defendant American Western Home Insurance (Doc. 59) are **GRANTED** as set forth above, and the Second Amended Complaint is **DISMISSED WITH PREJUDICE**.   The Clerk is directed to close the file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on November 10, 2016.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE